UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**HANNAH KESSLER**, *an individual*,

Plaintiff,

vs.

Case No.: 17-cv-
Hon.

**DIRECT CONSULTING ASSOCIATES LLC**, *an Ohio limited liability company*, **FRANK MEYEROFF**, *an individual*, and **JOHN YURKSCHATT**, *an individual*; *jointly and severally*;

Defendants.

---

**DEBORAH GORDON LAW**
**Deborah L. Gordon (P27058)**
**Benjamin I. Shipper (P77558)**
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
bshipper@deborahgordonlaw.com

---

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff **Hannah Kessler**, by and through her attorneys **Deborah Gordon Law**, complains against Defendants **Direct Consulting Associates LLC**, **Frank Meyeroff**, and **John Yurkschatt** as follows:

## Jurisdiction and Parties

1. This is an action by Plaintiff for sex/pregnancy discrimination, gender discrimination, and sexual harassment/hostile work environment against Defendants for their violations of Title VII, 42 USC § 2000(e), *et seq.*, and Michigan's Elliott-Larsen Civil Rights Act (ELCRA), MCL § 37.2101 *et seq.*

2. Plaintiff Hannah Kessler ("Plaintiff") is an individual domiciled in the State of Michigan. Her sole residence is in Michigan.

3. Defendant Direct Consulting Associates LLC ("Defendant DCA") is a limited liability company doing business in this District, but which is incorporated and with its principal place of business in the State of Ohio.

4. Defendant Frank Meyeroff ("Defendant Meyeroff") is an individual domiciled in the State of Ohio.

5. Defendant John Yurkschatt ("Defendant Yurkschatt") is an individual domiciled in the State of Ohio.

6. The events underlying this action occurred in this District.

7. This Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. Supplemental jurisdiction arises pursuant to 28 U.S.C. § 1367 as to Plaintiff's State law claims.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as substantial events or omissions giving rise to Plaintiff's claims occurred within its

boundaries. Specifically, this District is where Plaintiff's regular employment and office were and where instances of discriminatory conduct occurred.

**Background Facts**

9. Defendant DCA is an IT consulting and staffing firm.

10. Plaintiff is a woman.

11. Plaintiff first interviewed for a job at Defendant DCA on or around July 23, 2016.

12. Plaintiff's interviewed at Defendant DCA a second time on or around August 5, 2015.

13. However, Plaintiff did not receive an offer letter until September 16, 2015, and her first day did not begin until October 19, 2015.

14. At these initial interviews, Plaintiff and Defendants discussed that Plaintiff was engaged to be married, and that the wedding was to take place in April 2016.

15. Plaintiff was employed as a Sales Executive.

16. In the beginning of her employment, Kessler trained in Cleveland, Ohio, but, to further Defendant DCA's expansion in to Michigan, Plaintiff and Defendant agreed that Plaintiff would permanently work in Detroit, Michigan.

17. From the very beginning of her employment with Defendant DCA, Defendants began to discriminate against Plaintiff based on her protected classes of gender and pregnancy.

18. For example, Defendant Yurkschatt, an equity partner at Defendant DCA, told Plaintiff that he and Defendant DCA did not like hiring women because they were not as "motivated" as men.

19. With respect to Plaintiff, Defendant Yurkschatt told Plaintiff that he was hesitant to hire her because Plaintiff's "husband was a lawyer and probably made good money."

20. In addition, Bill Felberg, Plaintiff's immediate supervisor, told Plaintiff that Defendant DCA did not like hiring women who were getting married in the immediate future because Defendant DCA believed that such women would get pregnant soon after and take time off from work or retire.

21. Felberg told Plaintiff that Defendant DCA had "dragged their feet" in originally hiring Plaintiff (by interviewing her twice, then waiting one and one-half months to give her an offer letter) because Defendant DCA was afraid that since Plaintiff was getting married in April 2016 that she would get pregnant right away and take a leave from working for some time or not return to work at all.

22. In addition, Defendant DCA was a generally gender and pregnancy discriminatory work environment: Defendant Yurkschatt and Felberg told Plaintiff

that they thought she would be successful in the Information Technology (IT) field because she was "a very attractive female;" Defendant Yurkschatt, Felberg, and Defendant Meyeroff, the President of DCA, regularly referred to Plaintiff, one of the few women employed at DCA, as "Dear" in public, on the phone, and in texts and emails; Defendant Yurkschatt and Felberg regularly commented on Plaintiff's appearance, using the word "sexy" and "attractive,"; during a business trip to Las Vegas Defendants told Plaintiff that, instead of the jeans and covered top she was wearing that she should wear "more revealing" clothing; and when Defendant Yurkschatt and Felberg were in Detroit for work-related functions always required Plaintiff to be their designated driver while they drank at bars and made sexual jokes.

23. Plaintiff routinely objected to Defendants regarding their conduct.

24. In January 2016, Plaintiff's work duties required her to rent a car for to travel to Chicago from the Detroit Metro Area, which Defendant DCA's policies allow.

25. At the time of Plaintiff's business trip, there was a blizzard and Plaintiff did not feel comfortable driving a midsize sedan, so she asked Felberg if she could rent a slightly more expensive, but safer, SUV, and even offered to pay the difference herself. Felberg approved Plaintiff's request.

26. However, when Defendant Meyeroff discovered this additional expense, he berated Plaintiff, telling her that "since the men in the office drive midsize cars, she can, too."

27. In March 2016, Plaintiff received a positive performance review.

28. In April 2016, Plaintiff got married.

29. During the months of August and September 2016, Plaintiff told Defendants Yurkschatt and Meyeroff on multiple occasions that she was considering becoming pregnant.

30. On September 15, 2016, Plaintiff met with Defendant Meyeroff in Metro Detroit for a lunch meeting, where Defendant Meyeroff told Plaintiff how well she was doing at Defendant DCA, how she always submitted "very qualified candidates" for staffing, and was doing "an outstanding job."

31. On September 22, 2016, Defendant Meyeroff emailed Plaintiff, telling her that, contrary to the previous arrangement permanently placing Plaintiff in Detroit, Michigan, Defendants now required Plaintiff to travel to Cleveland, Ohio one week per month.

32. Plaintiff responded that: when she interviewed with Defendant DCA all parties decided Plaintiff would work from Detroit on a permanent basis; since moving to Detroit, Michigan Plaintiff and her husband planned to build their family there; and that, while she could agree to travel to Cleveland periodically,

working in Cleveland one week a month would be inconsistent with her "family goals."

33. As described to Defendants Meyeroff and Yurkschatt earlier that month, Plaintiff's family goals included becoming pregnant.

34. On September 23, 2016, Defendants Yurkschatt and Meyeroff called Plaintiff by phone and fired her during a conversation that lasted approximately one minute.

35. Defendants Yurkschatt and Meyeroff's stated reason for Plaintiff's termination was that Plaintiff's "family goals were in Michigan."

36. Plaintiff obtained a Right to Sue letter regarding her claims from the Equal Employment Opportunity Commission, dated March 22, 2017.

**COUNT I**
***Sex/Pregnancy Discrimination in Violation of***
***Title VII of the Civil Rights Act of 1964/Pregnancy Discrimination Act***

37. Plaintiff hereby incorporates all prior paragraphs as if set forth fully herein.

38. At all relevant times, Plaintiff was an employee and Defendant DCA was her employer within the meanings set forth in Title VII of the Civil Rights Act of 1964, *as amended*, 42 USC § 2000(e), *et seq.*

39. Plaintiff is a member of a protected class because of her potential for pregnancy, anticipated pregnancy, intended pregnancy, and her stated and/or assumed plans to become pregnant.

40. At all times, Plaintiff performed her job duties in a manner that was satisfactory or better.

41. Defendants' treatment of Plaintiff, as described above, was based, at least in part, on the unlawful consideration of her potential for pregnancy, anticipated pregnancy, intended pregnancy, and her stated and/or assumed plans to become pregnant.

42. Similarly situated individuals who did not have the potential to become pregnant, did not anticipate to become pregnant, did not intend to become pregnancy, did not state their plans to become pregnant, and Defendants' did not assume planned to become pregnant were treated better than Plaintiff.

43. Employees and agents of Defendant DCA were predisposed to discriminate against Plaintiff based on her potential for pregnancy, anticipated pregnancy, intended pregnancy, and her stated and/or assumed plans to become pregnant.

44. The actions of Defendants were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

45. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of her choice.

## COUNT II
***Sex/Pregnancy Discrimination in Violation of Michigan's Elliott-Larsen Civil Rights Act***

46. Plaintiff hereby incorporates all prior paragraphs as if set forth fully herein.

47. At all material times, Plaintiff was an employee and Defendant DCA was her employer covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act (ELCRA), MCL § 37.2101 *et seq*.

48. Defendants Yurkschatt and Meyeroff are people as that term is defined in the ELCRA, and are agents of Defendant DCA.

49. Plaintiff's potential for pregnancy, anticipated pregnancy, intended pregnancy, and her stated and/or assumed plans to become pregnant were factors in Defendants' less favorable treatment of Plaintiff, including the decision to terminate her.

50. As set forth above, Defendants discriminated against Plaintiff with respect to the terms, benefits and conditions of her employment.

51. Defendants, by their agents, representatives, and employees, were predisposed to discriminate on the basis of sex/pregnancy and acted in accordance with that predisposition.

52. Defendants' actions as described above were intentional and willful, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

53. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of her choice.

## COUNT III
### *Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964*

54. Plaintiff hereby incorporates all prior paragraphs as if set forth fully herein.

55. At all relevant times, Plaintiff was an employee and Defendant DCA was her employer within the meanings set forth in Title VII of the Civil Rights Act of 1964, *as amended*, 42 USC § 2000e, *et seq*.

56. Plaintiff is a member of a protected class; she is female.

57. At all times, Plaintiff performed her job duties in a manner that was satisfactory or better.

58. Defendants' treatment of Plaintiff, as described above, was based, at least in part, on the unlawful consideration of her sex/gender.

59. Similarly situated men were treated better in the terms and conditions of their employment.

60. Agents of Defendant DCA were predisposed to discriminate against Plaintiff based on her sex/gender.

61. The actions of Defendants were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

62. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of her choice.

## COUNT IV
### *Gender Discrimination in Violation of Michigan's Elliott-Larsen Civil Rights Act*

63. Plaintiff hereby incorporates all prior paragraphs as if set forth fully herein.

64. At all material times, Plaintiff was an employee, and Defendant DCA was her, employer covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act (ELCRA), MCL § 37.2101 *et seq*.

65. Defendants Yurkschatt and Meyeroff are people as that term is defined in the ELCRA, and are agents of Defendant DCA.

66. Plaintiff's gender was a factor that made a difference in Defendants' treatment of Plaintiff, including their harassment of her and the decision to terminate her.

67. Had Plaintiff been male, she would not have been harassed or terminated by Defendants.

68. Defendants, by their agents, representatives, and employees, were predisposed to discriminate on the basis of gender and acted in accordance with that predisposition.

69. Defendants, by their agents, representatives, and employees, treated Plaintiff differently from similarly situated male employees in the terms and conditions of employment, based on unlawful consideration of gender.

70. Defendants' actions as described above were intentional and willful, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

71. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of her choice.

**COUNT V**
***Sexual Harassment/Hostile Environment in Violation of Title VII of the Civil Rights Act of 1964***

72. Plaintiff hereby incorporates all prior paragraphs as if set forth fully herein.

73. At all relevant times, Plaintiff was an employee and Defendant DCA was her employer within the meanings set forth in Title VII of the Civil Rights Act of 1964, *as amended*, 42 USC § 2000e, *et seq*.

74. Defendants Yurkschatt and Meyeroff are people as that term is defined in Title VII, and are agents of Defendant DCA.

75. During the course of her employment, Plaintiff was subjected to unwanted comments of a sexual and offensive nature by Defendants Yurkschatt and Meyeroff, among others.

76. The treatment of Plaintiff by Defendant's agents, employees and representatives was because of sex.

77. The treatment of Plaintiff was severe and/or pervasive and created a hostile work environment.

78. Defendants' actions, as described above, were intentional and willful, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

79. Defendant DCA knew, or should have known, of the harassment.

80. As a direct and proximate result of Defendants' actions and actions of Defendant DCA's agents, employees and representatives, the terms, conditions, and privileges of Plaintiff's employment were adversely affected.

81. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of her choice.

## COUNT VI
### *Sexual Harassment/Hostile Work Environment in Violation of Michigan's Elliott-Larsen Civil Rights Act*

82. Plaintiff hereby incorporates all prior paragraphs as if set forth fully herein.

83. At all material times, Plaintiff was an employee, and Defendant DCA was her, employer covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act (ELCRA), MCL § 37.2101 *et seq*.

84. Defendants Yurkschatt and Meyeroff are people as that term is defined in the ELCRA, and are agents of Defendant DCA.

85. During the course of her employment, Plaintiff was subjected to unwanted comments of a sexual and offensive nature by Defendants Yurkschatt and Meyeroff, among others.

86. The treatment of Plaintiff by Defendant's agents, employees and representatives was because of sex.

87. The treatment of Plaintiff was severe and/or pervasive and created a hostile work environment.

88. Defendants' actions, as described above, were intentional and willful, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

89. As a direct and proximate result of Defendants' actions and actions of Defendant DCA's agents, employees and representatives, the terms, conditions, and privileges of Plaintiff's employment were adversely affected.

90. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of

earnings and earning capacity; loss of career opportunities; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of her choice.

## RELIEF REQUESTED

For all the foregoing reasons, Plaintiff demands judgment against Defendants as follows:

### A. LEGAL RELIEF

1. Compensatory, economic, and noneconomic damages in whatever amount she is found to be entitled;

2. Exemplary damages in whatever amount she is found to be entitled;

3. Punitive damages in whatever amount she is found to be entitled;

4. Liquidated damages in whatever amount she is found to be entitled; and

5. An award of interest, costs and reasonable attorney fees.

### B. EQUITABLE RELIEF

1. An order from this Court placing Plaintiff in the position she would have been in had there been no wrongdoing by Defendants, including reinstatement with back pay;

2. An injunction out of this Court prohibiting any further acts of wrongdoing;

3. An award of interest, costs and reasonable attorney fees; and

4. Whatever other equitable relief appears appropriate at the time of final judgment.

Dated: June 19, 2017

**DEBORAH GORDON LAW**
**/s/Deborah L. Gordon (P27058)**
**Benjamin I. Shipper (P77558)**
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
bshipper@deborahgordonlaw.com

## JURY DEMAND

Plaintiff Hannah Kessler, by her attorneys Deborah Gordon Law, demands a trial by jury of all the issues in this cause.

Dated: June 19, 2017

**DEBORAH GORDON LAW**
**/s/Deborah L. Gordon (P27058)**
**Benjamin I. Shipper (P77558)**
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
bshipper@deborahgordonlaw.com