**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

HANNAH KESSLER,

Plaintiff,

v.

DIRECT CONSULTING ASSOCIATES LLC, FRANK MEYEROFF, and JOHN YURKSCHATT,

Defendants.
______________________________________/

Case No. 17-11943

Hon. Marianne O. Battani

**OPINION AND ORDER GRANTING IN PART DEFENDANTS' AMENDED MOTION FOR JUDGMENT ON THE PLEADINGS**

## I. INTRODUCTION

Plaintiff Hannah Kessler commenced this action in this Court on June 19, 2017, asserting claims of sexual harassment and gender and pregnancy discrimination against her former employer, Defendant Direct Consulting Associates LLC ("DCA"), and two of DCA's officers, Defendants Frank Meyeroff and John Yurkschatt, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101 *et seq.* While she worked for DCA, Plaintiff signed an employment agreement with a combined forum selection and choice of law clause that (i) established the Court of Common Pleas of Cuyahoga County, Ohio as the exclusive forum for any litigation between the parties pertaining to the agreement, and (ii) provided that Ohio law governed the validity, interpretation, and enforcement of the agreement.

Presently before the Court is Defendants' amended motion for judgment on the pleadings.[1] In support of this motion, Defendants point to the forum selection clause in Plaintiff's employment agreement as mandating the dismissal of this suit, where Plaintiff purportedly is bound under this provision to bring this action only in an Ohio state court. Defendants further contend that Plaintiff's claims under Michigan law should be dismissed with prejudice, where she allegedly agreed in her employment contract that any claims arising from her employment with DCA were governed by Ohio law. In response, Plaintiff argues that the forum selection clause in her employment agreement should be deemed unenforceable as contrary to a venue provision in the federal Title VII statute and the public policy of the State of Michigan. Alternatively, if the Court determines that this clause is enforceable, Plaintiff insists that this case should be dismissed without prejudice, so that she may pursue her federal Title VII claims and any desired state law claims in an Ohio state court.

On December 14, 2017, the Court heard argument on Defendants' motion. For the reasons set forth below, the Court finds that the forum selection clause in Plaintiff's employment contract is enforceable, and that this case therefore must be dismissed without prejudice under the doctrine of *forum non conveniens.* Accordingly, the Court **GRANTS IN PART** Defendants' amended motion for judgment on the pleadings.

[1]On September 15, 2017, Defendants filed an initial motion for judgment on the pleadings. They then filed the present amended motion on September 27, 2017, citing new developments in related state court litigation since their initial motion was filed.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In October of 2015, Plaintiff Hannah Kessler was hired by Defendant Direct Consulting Associates LLC ("DCA") as a sales executive. Defendant John Yurkschatt is an equity partner at DCA, and Defendant Frank Meyeroff is the firm's president. Plaintiff alleges in her complaint that she was subjected to a hostile work environment during her employment with DCA, and that she was unlawfully discriminated against and ultimately discharged from her employment at DCA in September of 2016 due to her gender and her stated plan to become pregnant and raise a family. For purposes of resolving the present motion, it is not necessary to provide a more detailed account of the facts and allegations giving rise to Plaintiff's claims of discrimination and harassment.

In the course of her employment with DCA, Plaintiff evidently signed two employment agreements, and Defendants state without contradiction that Plaintiff was bound by an employment agreement dated January 15, 2016 at the time of her termination in September of 2016. The January 15, 2016 agreement included the following forum selection and choice of law provision:

> This Agreement is entered into in Solon, Cuyahoga County, Ohio and its validity, interpretation and enforcement shall be governed by the laws of the State of Ohio for all purposes. Each party hereto irrevocably submits to their personal jurisdiction within and under the Court of Common Pleas of Cuyahoga County, Ohio and further agrees that such court shall be the exclusive forum with respect to any litigation that may arise between the parties pertaining to this Agreement. Each party irrevocably waives its right to a trial by jury with respect to any litigation that may arise between them pertaining to this Agreement.

(Dkt. 20, Defendants' Amended Motion for Judgment on the Pleadings, Ex. A, 1/15/2016 Employment Agreement at ¶ 17.)

Shortly after it terminated Plaintiff's employment, Defendant DCA filed a declaratory judgment action in the Court of Common Pleas in Cuyahoga, Ohio, evidently in anticipation of Plaintiff's commencement of a wrongful discharge suit against her former employer. In May of 2017, DCA filed a motion for summary judgment in this state court suit, and the Ohio court granted this motion in a September 21, 2017 ruling, finding (i) that the forum selection clause in Plaintiff's employment agreement "cover[s] the filing of any discrimination claims [Plaintiff] has or may file in a federal or state court that arise from the [parties'] employment relationship," (ii) that "[v]enue lies exclusively in this Court as to any litigation between [DCA] and [Plaintiff] arising from the Employment Agreement or the employment relationship," and (iii) that "Ohio law governs any dispute between the [p]arties arising from the Employment Agreement[] or the employment relationship." (Defendants' Amended Motion, Ex. B, 9/21/2017 State Court Op. at 5.)[2]

While DCA's state court suit was pending, Plaintiff commenced the present action in this Court on June 19, 2017, asserting claims of sexual harassment and pregnancy and gender discrimination against DCA and two of its officers, Defendants Meyeroff and Yurkschatt, under Title VII and Michigan's ELCRA. Defendants now seek the dismissal of this suit as barred by the forum selection clause in Plaintiff's employment agreement, and as asserting claims under Michigan law despite language in the employment agreement that, in Defendants' view, limits Plaintiff to state law claims arising under Ohio law.

---

[2]Defense counsel indicated at the December 14, 2017 hearing that this Ohio court decision has not been appealed.

## III. STANDARD OF REVIEW

Through the present motion, Defendants seek the dismissal of this suit as brought in a forum different from the one specified by the parties in Plaintiff's employment agreement. Although Defendants suggest that dismissal is warranted "for improper venue," (Defendants' Amended Motion, Br. in Support at 6), the Supreme Court recently explained that a forum selection clause does not render a plaintiff's choice of a different venue "'wrong' or 'improper' within the meaning of [28 U.S.C.] § 1406(a) or [Fed. R. Civ. P.] 12(b)(3)." *Atlantic Marine Construction Co. v. United States District Court for Western District of Texas,* __ U.S. __, 134 S. Ct. 568, 579 (2013). Rather, the Court held that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens."* *Atlantic Marine,* 134 S. Ct. at 580.

As emphasized in *Atlantic Marine,* the factors that a court typically considers in a *forum non conveniens* analysis must be weighed differently — or, in some instances, wholly discounted — in cases where the parties' contract includes a valid forum selection clause. 134 S. Ct. at 581. First and foremost, while the plaintiff's choice of forum ordinarily is entitled to deference, this factor "merits no weight" in the face of the parties' contractual agreement to litigate in a different forum. 134 S. Ct. at 581. To the contrary, "as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." 134 S. Ct. at 581. Next, the court "should not consider arguments about the parties' private interests," because "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less

convenient for themselves or their witnesses, or for their pursuit of the litigation." 134 S. Ct. at 582. Rather, the court "may consider arguments about public-interest factors only," and these factors should only "rarely" override the parties' agreed-upon forum. 134 S. Ct. at 582. In short, the Court emphasized that "[w]hen parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations," but instead should "hold[] [the] parties to their bargain" in "all but the most unusual cases." 134 S. Ct. at 583.

## IV. ANALYSIS

### A. Plaintiff Has Failed to Identify a Basis for Refusing to Enforce the Forum Selection Clause in Her Employment Agreement.

#### 1. Applicable Law

The outcome of the present motion turns largely upon the enforceability of the forum selection clause in Plaintiff's employment agreement. Although neither side addresses the issue, the Court first must identify the law that governs this inquiry. In *Martinez v. Bloomberg LP,* 740 F.3d 211, 215 (2d Cir. 2014), the Second Circuit considered an employment contract that, like the agreement at issue here, included a "combined choice-of-law and choice-of-forum clause" specifying that "the [parties'] agreement 'shall be interpreted and construed in accordance with English law and [that] any dispute arising hereunder shall be subject to the exclusive jurisdiction of the English courts.'" Before reaching the parties' disputes as to the proper interpretation and enforceability of this clause, the court addressed the threshold question whether "federal law or the body of law specified in the choice-of-law clause govern[s] the effect of the choice-of-forum clause in an action brought in a federal district court." *Martinez,*

740 F.3d at 217. Upon thoroughly reviewing the Supreme Court's ruling in *Atlantic Marine* and a number of other relevant decisions, the court determined that "questions of enforceability are resolved under federal law, while interpretive questions — questions about the meaning and scope of a forum selection clause — are resolved under the substantive law designated in an otherwise valid contractual choice-of-law clause." 740 F.3d at 217-24.

The Sixth Circuit has not addressed this question at quite the same length, nor has it expressly considered the possible impact of a clause that specifies both the forum in which the parties have agreed to litigate and the law that will govern this litigation. Nonetheless, in a suit arising under the court's diversity jurisdiction, the Sixth Circuit held that federal law governed the enforceability of the forum selection clause at issue in that case, *see Wong v. PartyGaming Ltd.,* 589 F.3d 821, 828 (6th Cir. 2009), and there certainly is no reason to believe that this issue would be decided differently in a case where, as here, subject matter jurisdiction rests upon the plaintiff's assertion of a federal claim. Accordingly, this Court looks to federal law in resolving Plaintiff's challenge to the enforceability of the forum selection clause in her employment agreement. This inquiry, in turn, is guided by three considerations: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Wong,* 589 F.3d at 828.

In addition, the Court must weigh the public interest factors that bear upon the application of the doctrine of *forum non conveniens. See Atlantic Marine,* 134 S. Ct. at

581 n.6, 582. Most notably, the Supreme Court has stated that "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92 S. Ct. 1907, 1916 (1972).

**2. Plaintiff Is Bound by the Forum Selection Clause in Her Employment Agreement, Despite the Title VII Venue Provision That Otherwise Would Permit Her to Pursue Her Claims Before This Court.**

In their present motion, Defendants argue (i) that the forum selection clause in Plaintiff's employment agreement encompasses each of the federal and state-law claims of discrimination and sexual harassment asserted in Plaintiff's complaint, and (ii) that the enforcement of this clause should lead to the dismissal of this suit as brought in a forum other than the one agreed to by the parties. As to the first of these points, the parties seemingly agree that any question as to the scope of the forum selection clause has been decided in Defendants' favor by the Ohio state court in which Defendant DCA brought its declaratory judgment action. In particular, the state court broadly construed the forum selection clause's reference to "litigation . . . pertaining to this Agreement" as encompassing all "claims arising out of the 'employment relationship,'" and it found that the clause therefore applied to "any discrimination claims [Plaintiff] has or may file in a federal or state court that arise from the employment relationship." (Defendants' Amended Motion, Ex. B, 9/21/2017 State Court Op. at 5.) As Defendants observe, the state court's resolution of this issue must be given preclusive effect here in accordance with the Ohio law of collateral estoppel, *see Smith v. Sushka,* 117 F.3d 965, 969 (6th

Cir. 1997), and Plaintiff does not deny that the Ohio court's determination of the scope of the forum selection clause prevents the relitigation of this issue in this case.

Nonetheless, Plaintiff points out, and Defendants do not dispute, that the Ohio court did not reach the second issue bearing on Defendants' appeal to the forum selection clause — namely, the question whether this clause is enforceable. As explained above, this question is governed by federal law. In arguing that the forum selection clause in her employment agreement is not enforceable, Plaintiff relies almost exclusively on a provision in Title VII that permits a suit to be brought in any of three specified venues: (i) "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed," (ii) "in the judicial district in which the employment records relevant to such practice are maintained and administered," or (iii) "in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(3). According to Plaintiff's complaint, a substantial portion of the acts and omissions giving rise to Plaintiff's claims occurred in this District, (*see* Dkt. 1, Complaint at ¶ 8), so Title VII's venue provision plainly authorizes the commencement of this action in this District.

In Plaintiff's view, this venue provision "evidences a public policy favoring Plaintiff's right to bring her civil rights action in any of the specified forums." (Dkt. 24, Plaintiff's Response Br. at 9.) Thus, she contends that this public policy should override a forum selection clause that would operate to restrict — and, in some cases, negate — the range of venues that Title VII makes available to plaintiffs. Defendants, in contrast, argue that the specific forum selection clause at issue here is wholly reconcilable with the public policy concerns reflected in Title VII's venue provision, and they conclude that

this case does not present any unusual circumstances that would justify disregarding the parties' agreement on a forum for litigating their disputes.

While there is no binding Sixth Circuit precedent that dictates the Court's resolution of this question, each side has identified case law that favors its position. In support of her challenge to the enforceability of the forum selection clause, Plaintiff cites two district court decisions that declined to enforce private agreements limiting the plaintiffs' choice of forum in contravention of Title VII's venue provision. *See Smith v. Kyphon, Inc.,* 578 F. Supp.2d 954, 959-61 (M.D. Tenn. 2008); *Thomas v. Rehabilitation Services of Columbus, Inc.,* 45 F. Supp.2d 1375, 1379-81 (M.D. Ga. 1999). In support of their rulings in these cases, the courts reasoned that the Title VII venue provision was enacted for the purpose of "ensur[ing] that an aggrieved party would be afforded a range of choices in selecting her judicial forum, and thereby reduc[ing] some of the obstacles she may confront to fairly enforc[ing] her civil rights." *Thomas,* 45 F. Supp.2d at 1381; *see also Smith,* 578 F. Supp.2d at 961. The courts further observed that "[b]y broadly deferring to the plaintiff to select her preferred forum, Congress recognized that the plaintiff may submit her Title VII claim to a jury drawn from the local community, and sanctioned such an outcome in order that local residents may participate in the determination of whether the defendant's actions constitute an unlawful employment practice." *Thomas,* 45 F. Supp.2d at 1381; *see also Sepanski v. JaniKing, Inc.,* 822 F. Supp.2d 309, 315-16 (W.D.N.Y. 2011); *Smith,* 578 F. Supp.2d at 961. *See generally Red Bull Associates v. Best Western International, Inc.,* 862 F.2d 963, 967 (2d Cir. 1988) (declining to "adopt a *per se* rule that gives [forum selection clauses in private agreements] dispositive effect where the civil rights laws are concerned").

Defendants, for their part, point to a handful of federal appellate and district court decisions upholding the enforceability of forum selection clauses under circumstances similar to those presented here. In *Martinez, supra,* 740 F.3d at 214, 228, for example, the plaintiff asserted a claim against his former employer under the Americans with Disabilities Act ("ADA"), which incorporates by reference the Title VII venue provision, *see* 42 U.S.C. § 12117(a), but the defendant employer moved for dismissal of the suit pursuant to a clause in the plaintiff's employment contract that established the English courts as the sole forum for litigating any disputes arising under the contract. The Second Circuit recognized that the Title VII venue provision "express[es] a broad[] federal policy of ensuring access to a federal forum to enforce certain statutory claims," and stated that in light of this provision, "we consider the enforcement of the forum selection clause at issue here to present a close question." *Martinez,* 740 F.3d at 229. Nonetheless, the court concluded that the clause was enforceable, where the plaintiff had not demonstrated (i) "that the foreign forum's anti-discrimination law was insufficient to deter employers from violating the . . . civil rights of individuals with disabilities," or (ii) that he would encounter "personal difficulties . . . in litigating the matter in England," given that he "had lived and worked in the U.K. for more than six years, purchased a home there, and taken steps toward acquiring U.K. citizenship." 740 F.3d at 229-30.

More recently, the Second Circuit again held that a conflict between Title VII's venue provision and a contractual forum selection clause did not render the latter unenforceable. *See DeBello v. VolumeCocomo Apparel, Inc.,* No. 17-554, __ F. App'x __, 2017 WL 6616704, at *3 (2d Cir. Dec. 28, 2017). In that case, the plaintiff, Glenn DeBello, was hired as vice president of product development by a company

headquartered in Los Angeles, and he "regularly communicated" with the company's California employees. *DeBello,* 2017 WL 6616704, at *1. DeBello's employment agreement with the defendant company included a forum selection clause that established the Superior Court of Los Angeles as the venue for any suit arising from the agreement, but he instead brought a Title VII suit in a federal district court in New York, alleging that the harassment giving rise to his suit "took place in New York and occurred almost daily." *Id.* at *1-*2. Citing the forum selection clause, the district court dismissed the action under the doctrine of *forum non conveniens,* and the Second Circuit affirmed this decision.

In so ruling, the court rejected DeBello's contention that the forum selection clause in his employment contract was unenforceable as "contraven[ing] a strong public policy, reflected in Title VII's special venue provision, for litigating employment discrimination claims in a local venue affected by the discriminatory acts." *Id.* at *2. The court recognized that the Title VII venue provision "was designed to prevent national companies with distant offices from seeking to discourage claims by forcing plaintiffs to litigate far from their homes." *Id.* (internal quotation marks, alteration, and citations omitted). Nonetheless, the court found that under the facts of the case before it, this public policy interest did not override DeBello's knowing and voluntary agreement to an employment contract with a forum selection clause:

> We conclude . . . that in the circumstances here, DeBello's public policy argument does not overcome the presumption that a valid forum-selection clause should be given controlling weight in all but the most exceptional cases. This is not an exceptional case. In *Martinez,* we upheld a forum selection clause designating England as the exclusive forum for the plaintiff's claims under the Americans with Disabilities Act, despite the Act's incorporation of Title VII's special venue provision and

> the "Act's identification of a strong federal interest in combatting discrimination based on disability." 740 F.3d at 229. We are not persuaded here that the freely-bargained forum selection clause is unenforceable based solely on its conflict with a policy preference reflected in Title VII's special venue provision. Although DeBello is deprived of his choice of venue, he retains his right to litigate his discrimination claims. Moreover, DeBello, an experienced professional who was hired for an executive position at a relatively high salary, willingly entered into his employment agreement knowing it contained a forum selection clause, and he did so after he had the opportunity to consult with an attorney and make changes to the Agreement. [The defendant employer] is headquartered in Los Angeles and DeBello regularly interacted with [the company's] California-based employees.
>
> We emphasize that forum selection clauses do not have dispositive effect where the civil rights laws are concerned, and we do not foreclose the possibility that a conflict with Title VII's special venue provision, combined with other factors, may render a forum selection clause unenforceable. We hold simply that DeBello has not made a sufficient showing here.

*Id.* at *3 (internal quotation marks, alteration, and citations omitted).[3]

Returning to the present case, it bears emphasis that the Court is not constrained to follow any of the above-cited decisions, but instead may choose the path it deems

---

[3]Defendants also cite two federal district court decisions as supporting the enforceability of the forum selection clause in Plaintiff's employment contract, but neither ruling is especially helpful here. In both cases, the courts surveyed the several factors relevant to an inquiry under the federal change-of-venue statute, 28 U.S.C. § 1404(a). *See LeBlanc v. C.R. England, Inc.,* 961 F. Supp.2d 819, 830-35 (N.D. Tex. 2013); *Weiss v. Columbia Pictures Television, Inc.,* 801 F. Supp. 1276, 1278-82 (S.D.N.Y. 1992). As noted earlier, however, the Supreme Court has since held that only a subset of these factors should be considered when the parties' contract contains a valid forum selection clause. *See Atlantic Marine,* 134 S. Ct. at 581-83.

More importantly, neither court addressed the central issue presented here — namely, the effect of Title VII's venue provision on the enforceability of a forum selection clause. The plaintiff in *LeBlanc* asserted a claim of sexual harassment under Title VII, but the court's decision is silent as to the statute's venue provision. *Weiss* addressed a claim of age discrimination under the Age Discrimination in Employment Act, a statute that "provides no special venue requirements." *Weiss,* 801 F. Supp. at 1282.

most appropriate in light of the relevant legal principles and particular circumstances presented here. As a threshold matter, it seems difficult to reconcile the Supreme Court's recent decision in *Atlantic Marine* with the across-the-board rule that Plaintiff seemingly advocates here — *i.e.,* that forum selection clauses are unenforceable in all Title VII suits as incompatible with the public policy concerns reflected in the statute's venue provision. The Court emphasized in *Atlantic Marine* that "courts should not unnecessarily disrupt the parties' settled expectations" as embodied in a forum selection clause, and that "forum-selection clauses should control except in unusual cases." 134 S. Ct. at 582-83. A flat refusal to enforce forum selection clauses in all Title VII actions would not be confined to "unusual cases." It follows, then, that the impact of Title VII's venue provision on the enforceability of a forum selection clause should be evaluated on a case-by-case basis.

Viewed from this perspective, the Court agrees with Defendants that the cases cited by Plaintiff are distinguishable. In one of these cases, the court construed Title VII's venue provision as intended to "ensure that an aggrieved party would be afforded a range of choices in selecting her judicial forum," and it reasoned that any forum selection clause that restricted a plaintiff's "range of choices" would be unenforceable as contrary to the public policy reflected in this statutory provision. *Thomas,* 45 F. Supp.2d at 1381. As already explained, this broad reasoning — which necessarily would preclude the enforcement of any forum selection clause that specifies a single venue —

runs counter to *Atlantic Marine's* instruction that forum selection clauses should be enforced except in "unusual cases."[4]

In the second of the district court decisions cited by Plaintiff, the court gave greater consideration to the particular circumstances of the case before it, but those circumstances differ considerably from the ones presented here. The plaintiff in *Smith* worked from her home in Tennessee and "allegedly suffered discrimination and harassment" in that state, but the forum selection clause in her employment agreement called for any disputes to be litigated in California, where the defendant employer maintained its principal place of business. 578 F. Supp.2d at 956-57, 961. Against this backdrop, the court found that enforcement of the forum selection clause would contravene Title VII's venue provision, which the court viewed as embodying the public policy determinations (i) that an aggrieved party should be permitted to "bring her Title VII action in the forum in which the alleged discriminatory acts occurred," and (ii) that "Title VII plaintiffs should have a choice of where to bring suit." 578 F. Supp.2d at 961 (internal quotation marks and citation omitted).

Enforcing the forum selection clause in this case would not pose the same threat to these public policy interests. First, it appears from Plaintiff's complaint that at least some of the discriminatory acts giving rise to this suit occurred, in whole or in part, at Defendant DCA's principal place of business in Ohio. (*See, e.g.,* Complaint at ¶¶ 11-14, 17-19, 31, 34.) Accordingly, enforcement of the forum selection clause in Plaintiff's employment contract would be consistent with the language in Title VII's venue

---

[4]The court in *Thomas,* of course, did not have the benefit of the Supreme Court's ruling in *Atlantic Marine,* which was decided several years later.

provision permitting a suit to be brought "in the State in which the unlawful employment practice is alleged to have been committed." 42 U.S.C. § 2000e-5(f)(3). Similarly, this provision authorizes the bringing of a Title VII action "in the judicial district in which the employment records relevant to [an unlawful employment] practice are maintained or administered," 42 U.S.C. § 2000e-5(f)(3), and this likewise is consistent with the parties' selection of the Cuyahoga County court as the forum in which they agreed to litigate their disputes. Finally, Plaintiff does not contend that pursuing her claims in the Ohio courts would pose such difficulties as to jeopardize her opportunity to vindicate her rights under Title VII, and the litigation of Plaintiff's Title VII claims in the parties' specified forum, rather than this Court, would not alter in any way the legal standards that govern these claims or the relief available to Plaintiff if she should prevail. *See DeBello,* 2017 WL 6616704, at *3 (explaining that "[a]lthough DeBello is deprived of his choice of venue, he retains his right to litigate his discrimination claims").

Consequently, the only public policy interest embodied in Title VII's venue provision that would be diminished through the enforcement of the forum selection clause in this case is the aggrieved party's interest in selecting a preferred venue from among the range of choices authorized under that provision. Yet, as observed in *Atlantic Marine,* a plaintiff who freely enters into a contract with a forum selection clause surrenders the privilege she otherwise would enjoy to "select whatever forum [she] consider[s] most advantageous." 134 S. Ct. at 581. Instead, "when a plaintiff agrees by contract to bring suit only in a specified forum — presumably in exchange for other binding promises by the defendant — the plaintiff has effectively exercised [her] 'venue privilege' before a dispute arises," and this "initial choice deserves deference" absent a

showing by the plaintiff "why the court should not transfer the case to the forum to which the parties agreed." *Atlantic Marine,* 134 S. Ct. at 582. Plaintiff here has not shown that this is the unusual case where the parties' selection of a forum should be disturbed.

Finally, the Sixth Circuit's decision in *Smith v. Aegon Companies Pension Plan,* 769 F.3d 922 (6th Cir. 2014), lends considerable support to this conclusion. In that case, the plaintiff retiree, Roger Smith, challenged the decision of the defendant ERISA plan that it had overpaid Smith's monthly pension benefits for the past several years, and the defendant plan moved to dismiss the suit as brought in a court different from the one specified in the plan's forum selection clause. *See Smith,* 769 F.3d at 926. Smith and the Secretary of Labor, appearing in the case as an *amicus curiae,* argued that the plan's forum selection clause was unenforceable in light of a venue provision in ERISA specifying that a suit for plan benefits "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." *Smith,* 769 F.3d at 932 (quoting 29 U.S.C. § 1132(e)(2)).

The Sixth Circuit concluded on two grounds that ERISA's venue provision did not render the plan's forum selection clause unenforceable. First, the court found that the statutory venue provision "does not conflict with [the plan's] chosen venue," where "ERISA's venue provision is permissive" and the federal district court specified in the plan's forum selection clause matched one of the districts identified as an option in the statute. *Smith,* 769 F.3d at 932; *see also Price v. PBG Hourly Pension Plan,* No. 12-15028, 2013 WL 1563573, at *2 (E.D. Mich. April 15, 2013) (reasoning that although ERISA's venue provision states that "an action *may* be brought in several venues,"

private parties nonetheless are free to "narrow the options to one of these venues").

The Sixth Circuit then explained:

> . . . [E]ven if the [forum] selection clause laid venue outside of the three options provided by § 1132, the [forum] selection clause would still control. We have previously upheld the validity of mandatory arbitration clauses in ERISA plans, which are, in effect, a specialized kind of forum-selection clause. It is illogical to say that, under ERISA, a plan may preclude venue in federal court entirely, but a plan may not channel venue to one particular district court . . . . Thus, ERISA's venue provision does not invalidate [the plan's forum] selection clause.

*Smith,* 769 F.3d at 932-33 (internal quotation marks and citations omitted).

The Sixth Circuit's reasoning in *Smith* applies with equal force here. First, in determining that ERISA's venue provision is "permissive," the court focused on the language in the provision stating that a suit "'may be brought' in one of several districts." *Smith,* 769 F.3d at 932 (quoting 29 U.S.C. § 1132(e)(2)). Likewise, Title VII's venue provision features precisely the same language stating that "an action may be brought" in any of several specified federal judicial districts. 42 U.S.C. § 2000e-5(f)(3). And just as the forum selection clause in *Smith* specified one of the three districts identified as an option in ERISA's venue provision, the forum selection clause here places venue where Defendant DCA is headquartered, and thus is consistent with the language in the Title VII venue provision stating that a suit may be brought "in the judicial district in which the employment records relevant to [the challenged employment] practice are maintained and administered," 42 U.S.C. § 2000e-5(f)(3). Accordingly, just as *Smith* found that the forum selection clause in that case "d[id] not conflict" with ERISA's venue provision, *Smith,* 769 F.3d at 932, the forum selection clause in Plaintiff's employment contract does not conflict with Title VII's venue provision.

Next, the *Smith* court's comparison of forum selection and arbitration clauses is equally apt here. The Sixth Circuit has held that Title VII claims, like ERISA claims, may be subject to mandatory arbitration. *See Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305, 310 (6th Cir. 1991). Consequently, as the court reasoned in *Smith,* 769 F.3d at 932, it would be "illogical" to allow private parties to altogether remove a Title VII claim from the courts through a contract clause calling for mandatory arbitration, yet deny these same parties the right to specify, by means of a forum selection clause, a particular court in which they agree to litigate this claim.

Indeed, there is one important distinction between this case and *Smith* that points even more decisively toward enforcement of the forum selection clause in Plaintiff's employment agreement. As noted by the dissent in *Smith,* the forum selection clause in that case "was unilaterally added to the Plan seven years after" the plaintiff had retired and begun to receive pension benefits from the plan. *Smith,* 769 F.3d at 935 (Clay, C.J., dissenting). Here, in contrast, the forum selection clause is part of a contract of employment specifically entered into by Plaintiff and Defendant DCA, and this clause evidently was in the agreement from its inception. Nothing in the complaint or elsewhere in the record indicates that Plaintiff signed this contract unknowingly, involuntarily, or under duress. Nor does Plaintiff suggest in her response to Defendants' motion that this contract reflects anything other than an arm's-length transaction between the parties. Accordingly, the Court finds no basis for declining to enforce the forum selection clause in Plaintiff's employment agreement.

### B. Under the Doctrine of *Forum Non Conveniens,* This Suit Must Be Dismissed Without Prejudice.

Regardless of whether the Court finds — as it now has done — that this suit is subject to dismissal under the doctrine of *forum non conveniens* in light of the forum selection clause in Plaintiff's employment agreement, Defendants separately contend that Plaintiff's state law claims under Michigan's ELCRA should be dismissed with prejudice as barred by the agreement's choice of law provision. In Defendants' view, since Plaintiff "agreed to litigate all claims regarding the employment relationship under Ohio law," she cannot pursue claims of sexual harassment or discrimination under Michigan law. (Defendants' Amended Motion, Br. in Support at 8-9.)

The Court finds it inappropriate to reach this issue. As Plaintiff observes, a dismissal on grounds of *forum non conveniens* is without prejudice, as it does not resolve the case on the merits, but instead reflects "a determination that the merits should be adjudicated elsewhere." *Sinochem International Co. v. Malaysia International Shipping Corp.,* 549 U.S. 422, 432, 127 S. Ct. 1184, 1192 (2007). Because the Court has decided to dismiss the case without prejudice on this ground, it is now a matter of pure speculation (i) whether Plaintiff will choose to refile this suit in the Ohio state court called for in the forum selection clause, and (ii) if so, whether she will assert claims under Michigan or Ohio law. Under these circumstances, the Court declines to issue a purely advisory opinion as to whether a state law claim that Plaintiff might (or might not) choose to bring in a future suit would be barred by the choice of law provision in her employment agreement. Rather, this question should be left for resolution by the court in which the parties pursue any further litigation arising from Plaintiff's contract of employment.

## V. CONCLUSION

For these reasons, the Court **GRANTS IN PART** Defendants' September 27, 2017 amended motion for judgment on the pleadings (Dkt. 20). Through a separate judgment accompanying this opinion and order, the Court will dismiss this suit without prejudice under the doctrine of *forum non conveniens.*

**IT IS SO ORDERED.**

Date: July 6, 2018

s/Marianne O. Battani
MARIANNE O. BATTANI
United States District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on July 6, 2018.

s/ Kay Doaks
Case Manager